IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Colin Carpenter,                                )        Case No. 8:15-cv-00574-GRA-JDA
                                                )
            Plaintiff,                          )        **REPORT AND RECOMMENDATION**
                                                )        **OF MAGISTRATE JUDGE**
            v.                                  )
                                                )
M. Travis Bragg, William Dunbar, Millard        )
Grant, I. Williams, Thompson, United            )
States of America,                              )
                                                )
            Defendants.                         )
_____ )

        This matter is before the Court on Defendants' motion to dismiss or, in the

alternative, for summary judgment.  [Doc. 26.]  Plaintiff, proceeding pro se, brings this

action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA").  [Doc. 1.]  Pursuant to the

provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this

magistrate judge is authorized to review all pretrial matters in pro se cases and to submit

findings and recommendations to the District Court.

        Plaintiff filed this action on February 5, 2015.[1]  [Doc. 1.]  On July 21, 2015,

Defendants filed a motion to dismiss or, in the alternative, for summary judgment.  [Doc.

26.] On July 22, 2015, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d

309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the

possible consequences if he failed to adequately respond to the motion.  [Doc. 27.] Plaintiff

_____

        [1]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, this action was filed on February 5, 2015.  [Doc. 1-5 at 1 (envelope marked
as received by prison mailroom on February 5, 2015).]

filed a response in opposition on August 27, 2015. [Doc. 29.] Accordingly, Defendants'

motion is now ripe for review.

## BACKGROUND[2]

Plaintiff alleges that on March 7, 2014, Defendant Rory Thompson[3] ("Thompson"),

a correctional officer at FCI Bennettsville, handcuffed Plaintiff behind his back and

compelled Plaintiff to enter a cell already occupied by inmate Mandriez Spivey[4] ("Spivey")

in the Special Housing Unit ("SHU"). [Doc. 1-1 ¶ 4(a)–(b).] Thompson and other staff

members had knowledge that Spivey had assaulted another prisoner in the SHU and

Spivey was to be segregated from other prisoners. [*Id.* ¶ 4(b).] When Plaintiff was brought

to the cell, Spivey told Thompson that he did not want Plaintiff put into the cell; Plaintiff also

told Thompson that he did not want to go into the cell because he had a reasonable fear

of Spivey. [*Id.* ¶ 4(c).] That same day, Defendant Lieutenant William Dunbar ("Dunbar")

came to the cell, and Spivey told him that he did not want Plaintiff in the cell; however,

Dunbar left Plaintiff in the cell. [*Id.* ¶ 4(d).]

---

[2]Plaintiff indicates that he intends for his affidavit to be a part of the Complaint [Doc. 1 at 6–7 (stating that Plaintiff's affidavit is incorporated as a part of his Complaint)]; therefore, the facts included in this Background section are taken directly from Plaintiff's Complaint and Plaintiff's affidavit found at Docket Entry Numbers 1 and 1-1.

[3]Plaintiff's caption identifies this Defendant simply as Thompson [*see* Doc. 1]; however, Defendants have provided the declaration of Rory Thompson identifying himself as a Defendant in this case [Doc. 26-6 ¶ 2].

[4]Plaintiff refers to Spivey throughout his Complaint [*see* Doc. 1]; however, Defendants have clarified that the inmate's full name is Mandriez Spivey [Doc. 26 at 11].

On March 10, 2014, at approximately 2:45 a.m., Spivey was shouting to Defendant Neville Williams[5] ("Williams"), a correctional officer at FCI Bennettsville, about being forced to share a cell with Plaintiff; Williams failed to remove either Plaintiff or Spivey from the cell, and Spivey violently attacked Plaintiff. [*Id.* ¶ 4(e).] Williams observed the attack and failed to open the cell door or attempt to protect Plaintiff. [*Id.*] Shortly thereafter, Defendant Lieutenant Millard Grant ("Grant") opened the food trap slot, and he and Williams shouted at Spivey to "cuff up," but they did not open the door. [*Id.* ¶ 4(f).] Once Spivey had finished his attack on Plaintiff, he went to the food trap slot to be handcuffed and was removed from the cell. [*Id.*] The assault occurred at approximately 2:45 a.m.; however, Dunbar, Grant, Williams, Thompson, and Defendant Warden M. Travis Bragg ("Bragg") failed to have Plaintiff seen by medical personnel until approximately 7:29 a.m. [*Id.* ¶ 4(g).] As a result of the attack, Plaintiff suffered a "contusion to the face, scalp and neck, swollen face, bruises, nose bleeding, cut to inside mouth/lip, humiliation, pain and suffering, anxiety and fear." [Doc. 1 at 5 (internal quotation marks omitted).]

Plaintiff requests a declaratory judgment that Defendants violated Plaintiff's rights; $100,000 in compensatory damages from each Defendant; $100,000 in punitive damages from Bragg, Dunbar, Grant, Williams, and Thompson; a jury trial; injunctive relief to prohibit double-celling in the SHU of dangerous prisoners; and the costs and fees of this action. [*Id.* at 7.]

---

[5]Plaintiff identifies this Defendant as L. Williams [Doc. 1]; however, Defendants make clear his name is Neville Williams [Doc. 26-5 (declaration of Defendant Neville Williams)].

3

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under *Bivens***

In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of *federal* constitutional rights. 403 U.S. at 389. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983[6]; federal officials cannot be sued under § 1983, however, because they do not act under color of *state* law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v.*

---

[6]Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.

*Brennan*, 511 U.S. 825 (1994); *Mitchell v. Forsyth*, 511 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443–44 (4th Cir. 1988).  To establish a claim under *Bivens*, a plaintiff must prove two elements: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States and (2) the defendant did so under color of federal law.  *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted) (setting forth requirements for a § 1983 claim under color of state law); *see also Bivens*, 403 U.S. at 389 ("In [a previous case], we reserved the question whether violation of [the Constitution] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct.  Today we hold that it does.").

**Motion to Dismiss Standards**

***Rule 12(b)(1)***

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines.  *See id.*  The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases:  "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution

5

of disputed facts.'" *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"

> requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

7

If on a motion pursuant to Rule 12(b)(6), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude

8

granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Plaintiff argues that Defendants and other unknown persons were negligent, wrongful, and/or deliberately indifferent in their treatment of Plaintiff; specifically, Plaintiff contends Defendants subjected him to unnecessary risk by handcuffing him and compelling him to enter the cell of an assaultive inmate, Defendants failed to intervene when he was being assaulted, Defendants delayed his access to medical care, and Defendants failed

to adequately train or supervise their subordinates.  [Docs. 1, 1-1.]  As a result of their

actions and inactions, Plaintiff suffered injuries.  [*Id.*]  The Court will address each of

Plaintiff's claims.

***Bivens* Claims**[7]

### *Deliberate Indifference to Serious Medical Needs*

Plaintiff argues that Defendants were deliberately indifferent to his serious medical

needs by delaying his access to medical care.  [Doc. 1-1 ¶ 4(g).]  Defendants contend that

Plaintiff failed to exhaust his administrative remedies with respect to his deliberate

indifference to serious medical needs claim.  [Doc. 26 at 9.]  Upon review, the Court

agrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no

action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

---

[7]As an initial matter, the Court notes *Bivens* claims for damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend a *Bivens* remedy to federal agencies); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (noting "a *Bivens* action does not lie against either agencies or officials in their official capacity"). However, sovereign immunity does not bar damages actions against federal officials in their individual capacities for violation of an individual's constitutional rights. *Gilbert v. Da Grossa*, 756 F.2d 1455, 1459 (9th Cir. 1985) (citing *Davis v. Passman*, 442 U.S. 228 (1979)).  Further, sovereign immunity is not a bar to actions seeking equitable relief. *Singletary v. Fallen*, No. 0:11-543-CMC-PJG, 2012 WL 368375, at *2–3 (D.S.C. Jan. 17, 2012) (discussing relevant case and statutory law), *report and recommendation adopted by* 2012 WL 368364 (D.S.C. Feb. 3, 2012).  Accordingly, to the extent Plaintiff asserts *Bivens* claims for damages against the United States or any other Defendant in his official capacity, those claims should be dismissed; however the Court will consider Plaintiff's claims against Defendants in their individual capacities.

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). But *see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding

11

that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Defendants have submitted the declaration of Leigh Meredith ("Meredith"), an Attorney-Advisor for the United States Department of Justice, Federal Bureau of Prisons ("BOP"), who is assigned to the South Carolina Consolidated Legal Center. [Doc. 26-7 ¶ 1.] Meredith declares that she has access to BOP records and databases, including inmate administrative remedies information; that she is regularly involved in the processing of inmate administrative remedies and is familiar with the process; that she has investigated and reviewed responses to these requests at all three levels of review; and that her declaration is based upon her personal knowledge and review of the agency records. [*Id.* ¶ 2.] Under the Administrative Remedy Process, an inmate has 20 calendar days from the

date of the incident to file an institutional-level grievance. [*Id.* ¶¶ 3–4.] An inmate generally files an Informal Request for Relief with their Correctional Counselor. [*Id.* ¶ 3.] If an inmate is dissatisfied with the response, he may file a formal request for Administrative Remedy with the Warden. [*Id.*] If dissatisfied with this response, an inmate may then file at the regional level within 20 calendar days of the receipt of the Warden's response. [*Id.* ¶¶ 3–4.] If dissatisfied at the regional level, he may file at the national level within 30 calendar days of the receipt of the regional appeal. [*Id.* ¶ 4.] If an inmate does not receive a response within the time allotted, he may consider the non-response a denial of his appeal and proceed to the next level. [*Id.*]

Meredith reports that Plaintiff failed to exhaust his administrative remedies with respect to his claim that he was denied access to medical care for approximately four hours after the assault. [*Id.* ¶ 7.] She states that this issue has not been presented to the BOP for agency review and that Plaintiff is now time-barred from bringing this claim. [*Id.*] The record includes no evidence that Plaintiff filed any grievance or appeal related to this claim. [*See id.* at 6–12 (copies of Plaintiff's grievances and appeals).] Accordingly, Plaintiff has failed to exhaust his administrative remedies and summary judgment is appropriate with respect to Plaintiff's deliberate indifference to serious medical needs claim.

### *Failure to Protect*

Plaintiff contends that Defendants were deliberately indifferent in failing to protect Plaintiff from the assault by Spivey because Defendants knew Spivey was an assaultive inmate and in failing to stop the assault sooner. [Docs. 1 at 5; 1-1 ¶ 4(a)–(f).] Defendants argue that Plaintiff has not established an Eighth Amendment violation. [Doc. 26 at 26–32.]

The Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). The United States Supreme Court and the Fourth Circuit Court of Appeals have rejected a negligence standard in determining deliberate indifference. *See Whitley*, 475 U.S. at 319; *Moore v. Winebrenner*, 927 F.2d 1312, 1315–17 (4th Cir. 1991). Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing a Fourth Circuit case adopting the Supreme Court's reasoning in *Whitley*). A plaintiff must allege facts to show he was exposed to a substantial risk of serious harm in that if nothing was done he was almost certain to face serious injury at the hands of other inmates. *See Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (noting that the Eight Amendment protects against risk of future harm that is "'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers'" (citation omitted)).

Here, Plaintiff has failed to demonstrate that any Defendant knew of a specific risk of harm to Plaintiff caused by leaving him in a cell with Spivey and then disregarded the risk. Plaintiff alleges that Spivey was known to be assaultive and dangerous, that he had previously assaulted a cellmate in the SHU, and that he was classified as being in need of

segregation of other prisoners.[8]  [Doc. 1-1 ¶ 4(b).]  Plaintiff further alleges that Spivey told Thompson he did not want Plaintiff placed in the cell with him, Plaintiff told Thompson he did not want to enter the cell because he had a reasonable fear of Spivey, Spivey told Dunbar he did not want Plaintiff in the cell, and Spivey "holler[ed] through the cell door to . . . Williams about being tricked, lied to, and for being compelled to occupy the cell with [Plaintiff]."  [*Id.* ¶¶ (c)–(e).]

However, Dunbar avers that it was his responsibility to determine the cell assignments of inmates in SHU.  [Doc. 26-3 ¶ 3.]  He states that it was common practice to house inmates with cellmates unless they were designated "Cell Alone," but if an inmate made a specific threat against another inmate they would be designated "separates" and would not be housed together.  [*Id.*]  Dunbar avers that Spivey and Plaintiff were not designated "separates" and while Spivey expressed that he did not want a cellmate, neither Spivey nor Plaintiff expressed any urgency to be removed from the cell or conveyed any threat of violence against the other.  [*Id.* ¶¶ 4, 6.]

Plaintiff's allegations fail to show Defendants knew of a specific risk to Plaintiff's safety.  There is no evidence in the record that Plaintiff expressed to any Defendant or any other staff at FCI Bennettsville fear for his safety or that a risk to Plaintiff's safety was otherwise noted.  Plaintiff has failed to present anything more than his bare allegations that Defendants were aware of a risk to Plaintiff's safety before or after moving him into a cell

---

[8]Plaintiff alleges that Spivey was known to have attacked a cellmate before and was designated as in need of "segregation"; however, Plaintiff's conclusory statement, without more, is insufficient to preclude granting the summary judgment motion. *See Ross*, 759 F.2d at 365 (holding that unsupported, conclusory allegations will not preclude summary judgment).

with Spivey. Therefore, Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants were deliberately indifferent to Plaintiff's safety when they placed him in the cell with Spivey.[9]

With respect to Plaintiff's claim that Defendants failed to protect him by failing to stop the assault sooner, Plaintiff has also failed to state a constitutional violation.  The Fourth Circuit Court of Appeals has stated that "it [is] clearly established in this circuit that correctional officers who are present when a violent altercation involving an armed inmate erupts and fail to intervene immediately do not violate the Eighth Amendment if the officers are unarmed, unaware of a risk of harm prior to the altercation, and take reasonable steps to intervene safely."  *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003).  However, a correctional officer who passively observes an assault and takes no action whatsoever to intervene violates the rights of a victim inmate.  *See Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978).  Because the undersigned has concluded that there was no prior warning, Plaintiff must show Defendants "witnessed the attack and nonetheless were deliberately indifferent to the risk it presented."  *See Parker v. Maryland*, 413 F. App'x 634, 639 (4th Cir. 2011)

---

[9]To the extent Plaintiff argues that his Eighth Amendment rights were violated by the practice of handcuffing inmates behind their backs and compelling them to enter the cell of another inmate, the Court finds Plaintiff has not alleged a constitutional violation.  Plaintiff does not allege that he was handcuffed at the time of the assault by Spivey [*see* Doc. 1] and even states that Thompson removed the handcuffs [Doc. 1-1 ¶ 4(c)].  Dunbar also avers that Plaintiff was not handcuffed and left alone in a cell with Spivey.  [Doc. 26-3 ¶ 5.]  Accordingly, there is no causal connection between the alleged unconstitutional behavior by Defendants and any harm to Plaintiff; thus, summary judgment is appropriate with respect to this claim.

Here, Williams avers that he responded to a an alert from Plaintiff and Spivey's cell at approximately 2:40 a.m. on November 10, 2014, and that Spivey was acting agitated and upset. [Doc. 26-5 ¶ 3.] Williams asserts that he called for back-up; Grant arrived and ordered Spivey to submit to hand restraints; rather than comply, Spivey became aggressive with Plaintiff, hit him with a closed fist, and attempted to pull him off of the top bunk bed. [*Id.* ¶¶ 3–4.] Grant again ordered Spivey to submit to hand restraints, and he complied. [*Id.* ¶ 4.] Williams avers that there was no prior warning before Spivey hit Plaintiff and the incident lasted only a moment. [*Id.* ¶ 5.] Plaintiff has agreed that Williams and Grant responded to the attack by yelling at Spivey to "cuff up"and eventually removing him from the cell. [Doc. 1-1 ¶ 4(f).] Thus, Plaintiff has not established that Defendants were deliberately indifferent, and summary judgment is appropriate with respect to this claim.

### *Failure to Train*

Any claims against Defendants for failure to train their subordinates are without merit. To allege a claim of failure to train, there must be deliberate indifference by the defendant supervisor. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference may be found where "the need for more or different training is so obvious, and the [failure to train is] likely to result in the violation of constitutional rights." *Id.* at 390. "To impose supervisory liability under § 1983 for failure to train subordinates, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) the failure to train actually caused the subordinates to violate the plaintiff's rights." *Brown v. Mitchell*, 308 F.Supp.2d 682, 701 (E.D. Va. 2004) (citations

17

omitted).  "[A] section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."  *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).  As stated above, in this case, Plaintiff is unable to establish an underlying constitutional violation by a subordinate employee; accordingly, Defendants' motion for summary judgment should be granted with respect to Plaintiff's failure to train claim.[10]

### *Qualified Immunity*

Defendants also argue they are entitled to qualified immunity with respect to Plaintiff's *Bivens* claims.  [Doc. 26 at 23–25.]  The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

---

[10]Plaintiff has alleged that all Defendants were deliberately indifferent in failing to train or supervise [Doc. 1-1 ¶ 7]; however, it is unclear whether all Defendants were in supervisory positions.  Because the Court finds that none of the Defendants could be liable for failure to train, it is unnecessary to parse out which Defendants were in supervisory roles.

18

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the

normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**FTCA Claims**

The FTCA provides a limited waiver of sovereign immunity whereby the United States government submits itself to be sued in limited situations for negligent acts by its employees, in which private individuals under similar circumstances would be liable under state law.  28 U.S.C. § 1346(b) and §§ 2671, et seq.  A suit under the FTCA lies only against the United States, and a federal district court lacks subject-matter jurisdiction over claims asserted against federal agencies or individual federal employees.[11]  *See Myers and Myers, Inc. v. U.S.P.S.*, 527 F.2d 1252, 1256 (2d Cir. 1975).  The provisions of the FTCA are to be strictly construed.  *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979) (holding that the FTCA waiver should not be extended or narrowed beyond that which Congress intended).

### *Discretionary Function Doctrine*

Plaintiff argues, among other claims, that Defendants were negligent in assigning him to a cell with Spivey and in failing to intervene in the assault.  [Docs. 1 at 5; 1-1 ¶ 4(b), (e), (f).]  The government contends that the Court lacks subject matter jurisdiction over

---

[11]Accordingly, to the extent that Plaintiff attempts to bring his FTCA claims against any Defendant other than the United States, dismissal of those Defendants is appropriate with respect to Plaintiff's FTCA claims.

these claims because the discretionary function exception to sovereign immunity is applicable. [Doc. 26 at 38–43.] The Court agrees it lacks jurisdiction over these claims.

Section 2680 of title 28 sets forth exceptions to the FTCA's waiver of sovereign immunity. Under the discretionary function exception, the FTCA does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). If the discretionary function exception applies, the court is without subject matter jurisdiction and must dismiss the action. *See Anderson v. U.S.*, 669 F.3d 161, 164 (4th Cir. 2011). It is the plaintiff's burden to show that the discretionary function exception does not apply. *Welch*, 409 F.3d at 651.

The discretionary function exception applies where the government action at issue "'[1] involves an element of judgment or choice' [2] that is 'based on consideration of public policy.'" *Holbrook v. U.S.*, 673 F.3d 341, 345 (4th Cir. 2012) (quoting *Berkovitz v. U.S.*, 486 U.S. 531, 536–37 (1988)). An element of judgment or choice is not involved where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536.

If discretion is involved, the court must then determine whether the challenged action is based on considerations of public policy. *Indemnity Ins. Co. of N. Am. v. U.S.*, 569 F.3d

21

175, 180 (4th Cir. 2009). "Rather than requiring a fact-based inquiry into the circumstances surrounding the government actor's exercise of a particular discretionary function, . . . a reviewing court in the usual case [should] look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. U.S.*, 986 F.2d 716, 721 (4th Cir. 1993); *see also United States v. Gaubert*, 499 U.S. 315, 325 (1991) ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). "Where, however, a regulation authorizes or requires employee discretion, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Holbrook*, 673 F.3d at 345 (quoting *Gaubert*, 499 U.S. at 324).

*Cellmate Assignment*

Applying this test to Plaintiff's claim that Defendants were negligent in assigning him to a cell with Spivey, the Court finds that Plaintiff has not carried his burden to show that his claim falls within the FTCA's limited waiver of sovereign immunity and outside the discretionary function exception. Title 18 U.S.C. § 3621(b) provides, in pertinent part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering–
>
> > (1) the resources of the facility contemplated;
> >
> > (2) the nature and circumstances of the offense;

22

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence–

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Additionally, Program Statement 5100.08, *Inmate Security Designation and Custody Classification*, authorizes the BOP to determine where an inmate should be housed; further, Program Statement 5180.05, *Central Inmate Monitoring System*, requires certain processes and considerations be considered in creating cell assignments for inmates designated "separates." [Docs. 26-13, 26-14.] Program Statement 5270.10, *Special Housing Units*, authorizes the BOP to place inmates in the SHU for disciplinary and administrative segregation purposes. [Doc. 26-15.]

Here, the facts and evidence presented to the Court establish that the BOP's decision to assign Plaintiff to a cell with Spivey involved an element of judgment or choice.[12] *See Dalehite v. U.S.*, 346 U.S. 15, 36 (1953) ("[W]here there is room for policy judgment and decision there is discretion."); *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (stating that prison officials "should be accorded wide-ranging deference in the adoption

---

[12]As previously noted, Plaintiff's bare allegation that Spivey was designated as being in need of "segregation" [Doc. 1-1 ¶ 4(b)] is insufficient to preclude summary judgment. *See Ross*, 759 F.2d at 365.

and execution of policies and practices that in their judgment are needed to preserve internal order and . . . security."). Specifically, BOP officials had the discretion to place Plaintiff in a SHU cell; further, as explained, supra, Plaintiff did not inform BOP officials of any specific threats made against him, and Spivey did not exhibit threatening behavior toward him prior to the attack. Moreover, the decision to assign Plaintiff to a cell with Spivey is of the type generally protected by the discretionary function exception. *See Santana-Rosa v. U.S.*, 335 F.3d 39, 44 (1st Cir. 2003) (holding that classification and assignment decisions, as well as the allocation of guards and other correctional staff, fall within discretionary function exception to FTCA); *Alfrey v. U.S.*, 276 F.3d 557, 565 (9th Cir. 2002) (finding that where BOP officials decided not to relocate inmate in face of death threats by his cellmate and inmate subsequently was killed, the discretionary function exception barred FTCA claim); *Calderon v. U.S.*, 123 F.3d 947, 950 (7th Cir. 1997) (finding that prison administrators' decision not to separate inmate from another inmate who threatened and ultimately attacked him fell within discretionary function exception) .

Accordingly, the BOP's actions in assigning Plaintiff to a cell with Spivey were discretionary as there is a clear absence of mandatory or prescribed procedures and such decisions have been recognized as policy laden. Thus, the government cannot be liable for Plaintiff's claim that prison officials were negligent in placing him and Spivey in the same cell, and this portion of FTCA claim should be dismissed for lack of subject matter jurisdiction.

### Failure to Intervene in Assault

Plaintiff argues that the prison staff acted with negligence when they failed to promptly intervene in the assault by Spivey. [Doc. 1 at 5.] Beginning with the first element

24

of the discretionary function test, 18 U.S.C. 4042(a)(2)–(3) requires the BOP to provide for the "protection" and "safekeeping" of inmates in its care. This statute leaves the implementation of such duties to the discretion of BOP officials.  BOP Program Statement 3420.11, *Standards of Employee Conduct*, Section 6, states that "[b]ecause failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatary that employees respond immediately, effectively, and appropriately during all emergency situations."   [Doc. 26-4 ¶ 8.]   Further, the FCI Bennettsville SHU Special Post Orders state that during an inmate fight or assault, "staff will issue orders to stop and submit to hand restraints.  Cell or recreation cage doors will not be opened unless ordered by a Lieutenant on scene . . . .  On the order of the Lieutenant, the door will be opened and all occupants will be separated and immediately secured in hand restraints."  [*Id.* ¶ 9.]   Under these guidelines, prison officials retain discretion in determining when and under what conditions a cell door should be opened.  Therefore, the first prong of the discretionary function exception analysis is satisfied.  *See Cohen v. U.S.*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception.").

Turning to the second prong of the discretionary function test, courts have held that the decision about when and how to intervene in an altercation between two inmates is a policy-related determination.  *See Davis v. U.S.*, 2010 WL 2754321, at *7 (W.D. Va. Jul. 12, 2010) ("Decisions about when and how to intervene in an inmate fight are 'part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons.'" (quoting *Cohen*, 151 F.3d at 1344)).  Moreover,  the decision

25

of how to protect an inmate from an assault by another inmate is the type of decision the discretionary function exception is designed to shield. *See, e.g., Whitley*, 475 U.S. at 321–22 (finding that prison officials have discretionary power over the safety of the institutions they operate)*;* *Donaldson v. U.S.*, 281 F.App'x, 75, 76–78 (3d Cir. 2008) (upholding dismissal of an FTCA claim that federal prison employees failed to protect plaintiff from assault by a fellow prisoner on a finding that the claim was barred by the discretionary function exception); *Alfrey*, 276 F.3d at 564; *Byrd v. U.S.*, 2010 WL 4922519, at *5–6 (E.D. Va. Nov. 29, 2010) (holding that a "plaintiff's FTCA claim that federal officials negligently failed to protect him from assault by another inmate is barred by the discretionary function exception.").

Accordingly, to the extent the officers' delayed in responding to the altercation between Plaintiff and Spivey, such delay is consistent with the BOP's regulations regarding intervention in inmate conflicts. There is no requirement that an officer immediately intervene in an altercation among inmates; officers are permitted discretion in determining an appropriate moment to intervene with consideration for their safety, the safety of the inmates, and restoration of order. Moreover, this discretion furthers the public policy considerations behind the BOP regulations governing intervening in inmate conflicts. Thus, the Court finds that both prongs of the discretionary function test are satisfied, and this claim should be dismissed for lack of subject matter jurisdiction.

### *Remaining Claims*

In his remaining claims under the FTCA, Plaintiff argues Defendants were negligent in requiring him to enter the cell occupied by Spivey while handcuffed, in failing to have him promptly seen by medical staff, and in supervising prison staff. [Docs. 1 at 5; 1-1 ¶¶ 4(a),

4(g), 7.]  Defendants argue that Plaintiff has failed to state a valid claim for negligence. [Doc. 26 at 46.]  The Court agrees Defendants are entitled to summary judgment with respect to these claims.

Under the FTCA, federal courts are directed to determine liability based upon a consideration of relevant state law; because the negligence allegedly occurred at FCI Bennettsville, located in South Carolina, the substantive law of South Carolina controls. *See United States v. Neustadt*, 366 U.S. 696, 706 n. 15 (1961).  To prove negligence in South Carolina, a plaintiff must show (1) that defendant owed plaintiff a duty; (2) such duty was breached; and (3) damage resulted from the breach of the duty.  *Bloom v. Ravoira*, 339 S.C. 417 (S.C. 2000).  The duty owed under the FTCA is that of "reasonable care" and "ordinary diligence." *Pendergrass v. U.S.*, Case No. 11-cv-2706, 2013 WL 518842, at *2 (D.S.C.  Feb. 12, 2013); *Harley v. U.S.*, No. 08-820, 2009 WL 187588 at *4 (D.S.C. Jan. 26, 2009).

A breach of such duty is shown where it is "foreseeable that one's conduct may likely injure the person to whom the duty is owed." *Horne v. Beason*, 331 S.E.2d 342, 344 (S.C. 1985).  In the event that there a breach of duty, the "damages allegedly sustained must be shown to have been proximately caused, i.e. causally connected, to the breach of duty in order to warrant a recovery." *Id.*  The proximate causation analysis is a two-step process, that requires proof of both legal causation and cause-in-fact.  *See Oliver v. S.C. Dep't of Highways & Pub. Transp.*, 422 S.E.2d 128, 130 (S.C. 1992).  Legal causation "turns on the issue of foreseeability . . . .  An injury is foreseeable if it is the natural and probable consequence of a breach of duty," while "[c]ausation in fact is proved by establishing the

27

plaintiff's injury would not have occurred 'but for' the defendant's negligence." *Parks v. Characters Night Club*, 548 S.E.2d 605, 609 (S.C. Ct. App. 2001).

Additionally, under South Carolina law, "'[n]egligence is not actionable unless it is a proximate cause of the injuries, and it may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided.'" *Hanselmann v. McCardle*, 267 S.E.2d 531, 533 (S.C. 1980) (quoting *Hughes v. Children's Clinic, P.A.*, 237 S.E.2d 753, 757 (S.C. 1977)). The defendant's negligence does not have to be the sole proximate cause of the plaintiff's injury; the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury. *Hughes*, 237 S.E.2d at 757. Ordinarily, proximate cause is a question for the jury; however, when the evidence is susceptible to only one inference, it becomes a matter of law for the court. *Small v. Pioneer Mach., Inc.,* 494 S.E.2d 835, 843 (S.C. Ct. App. 1997).

### *Entering a Cell While Handcuffed*

Defendants contend that Plaintiff has not established that they breached a duty owed to him or established any damages resulting from a breach of duty by requiring Plaintiff to be handcuffed when he entered he cell occupied by Spivey. [Doc. 26 at 46–47.] The Court agrees Defendants are entitled to summary judgment with respect to this claim.

As discussed, supra, Plaintiff has not alleged that he suffered any adverse effect as a result of being handcuffed when he entered the cell occupied by Spivey. Further, Defendant Dunbar has averred that Plaintiff was never left alone with Spivey while handcuffed and was not handcuffed at the time of the assault. [Doc. 26-3 ¶ 5.] Thus, even if the Court were to assume that handcuffing an inmate during a transfer to another cell breached a duty owed to him, Plaintiff has failed to establish the requisite causation

between such a breach and the injuries he suffered in the attack by Spivey. Accordingly, summary judgment is appropriate with respect to this claim.

### Failure to Provide Medical Care

Plaintiff contends that Defendants breached a duty of care by failing to provide access to medical care for approximately four hours after the assault by Spivey.[13] [Doc. 1 at 5; 1-1 ¶ 4(g).] Defendants contend that the evidence supports a finding that Plaintiff received proper medical care, considering Plaintiff's relatively minimal injuries. [Doc. 26 at 47–48.] The Court agrees that Plaintiff has failed to establish Defendants acted negligently in providing him with medical care.

Here, Plaintiff has made neither alleged nor proffered evidence that any of his injuries were caused or made worse as a result of a delay in receiving treatment. Further, there is nothing in the medical report that would suggest that Plaintiff was in need of immediate medical treatment. The medical report notes Plaintiff experienced pain on a scale of 7 and Plaintiff reported that the "whole left side of [his] face [was] hurting, busted [his] nose, cut in [his] mouth from [his] tooth." [Doc. 26-11 at 2.] However, the medical provider also noted that Plaintiff appeared well, had no obvious injury noted in the head to toe exam, that his face had no swelling or tenderness, and that his mouth showed no lacerations. [*Id.* at 2–3.] Plaintiff was prescribed acetaminophen three times each day for a week. [*Id.* at 3.] Accordingly, because Plaintiff fails to even allege, and the record fails

---

[13]Because Plaintiff alleges that Defendants negligently delayed his access to medical care, but not that the medical care he received was inadequate, Plaintiff's claim will be evaluated under a negligence standard and not a medical malpractice standard.

to demonstrate, that a delay of four hours in the receipt of medical care was a proximate cause of any injury, summary judgment is appropriate with respect to this claim.

*Negligent Supervision/Instruction*

Plaintiff argues that Defendants were negligent in training and/or supervising subordinates. Defendants contend that they did not breach a duty of care owed to Plaintiff and Plaintiff has not produced any evidence of his claims beyond his own conclusory statements. [Doc. 26 at 48–49.] The Court agrees Plaintiff has not produced sufficient evidence of his assertions to survive summary judgment.

Under South Carolina law, an employer can be liable for negligently hiring, supervising, or training an employee where "an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008). The Supreme Court of South Carolina has articulated that an employer is liable for negligent supervision if an employee, outside the scope of his employment, intentionally harms another when he:

> (I) is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or
>
> (ii) is using a chattel of [the employer], and . . . [the employer]
>
> (I) knows or has reason to know that he has the ability to control his [employee], and
>
> (ii) knows or should have known of the necessity and opportunity for exercising such control.

*Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992) (quoting Restatement (Second) of Torts § 317 (1965) (alterations in *Degenhart*)). Further, a "governmental entity is not liable for a loss resulting from . . . responsibility or duty including but not limited to

30

supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except where the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. 15-78-60(25). "A defendant is guilty of gross negligence if he is so indifferent to the consequences of his conduct as not to give slight care to what he is doing." *Jackson v. S.C. Dep't of Corr.*, 390 S.E.2d 467, 468 (S.C. Ct. App. 1989). "[T]he Supreme Court has counseled that the fact that 'a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [government entity].'" *See Gilco v. Logan Cnty. Com'n*, 2012 WL 3580056, at *7 (S.D.W. Va. Aug. 17, 2012) (citing *City of Canton*, 489 U.S. at 390 (1989)) (some alterations in *Gilco*). Negligent training and negligent supervision are not separate torts in South Carolina. *Gainey v. Kingston Plantation*, No. 4:06-3373-RBH, 2008 WL 706916, at *7 n. 4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision.").

As an initial matter, Plaintiff has not alleged that any Defendant intentionally harmed him. Moreover, Plaintiff has failed to allege that Defendants should have known that any employee posed an undue risk of harm to the public. South Carolina courts have generally examined specific evidence regarding an employee's history, behaviors, or pattern of behavior when examining causes of action for negligent supervision or negligent training *See, e.g.*, *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014); *Bank of New York v. Sumter Cnty.*, 691 S.E.2d 473, 478 (S.C. 2010); *Hamilton v. Charleston Cnty. Sheriff's Dep't*, 731 S.E.2d 727, 730 (S.C. Ct. App. 2012). Plaintiff contends that Defendants were on notice that he would be attacked because Spivey had assaulted a cellmate before [Doc. 1-1 ¶ 7]; however, Plaintiff has failed to state that any supervisor

should have been aware that an employee would allow him to be assaulted by his cellmate and fail to respond.  Thus, summary judgment is appropriate with respect to this claim.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion to dismiss or, in the alternative, for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

United States Magistrate Judge

November 30, 2015
Greenville, South Carolina